**Honorable Ronald V. DELLUMS, et al.,**

v.

**James M. POWELL, Chief, United States Capitol Police, and John N. Mitchell, Department of Justice, Appellants,**

**Jerry V. Wilson, Chief, Metropolitan Police Department, et al.**

No. 80–1331.

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1981.

Decided July 24, 1981.

David H. White, Atty., Dept. of Justice, of the bar of the Supreme Court of Kentucky, Lexington, Ky., pro hac vice, by special leave of court, with whom Alice Daniel, Asst. Atty. Gen. at the time the brief was filed, Washington, D. C., Charles F. C. Ruff, U. S. Atty., and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants. Robert J. Franzinger, Atty., Dept. of Justice, Washington, D. C., entered an appearance for appellants.

Judith A. Sandler, Washington, D. C., with whom Arthur B. Spitzer, Warren K. Kaplan, and Richard J. Kendall, Washington, D. C., were on the brief, for appellees.

Before WRIGHT, TAMM and EDWARDS, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Opinion concurring in part and dissenting in part filed by Circuit Judge HARRY T. EDWARDS.

J. SKELLY WRIGHT, Circuit Judge:

This appeal raises narrow issues concerning official immunity against suits alleging constitutional violations. The District Court held that defendants John Mitchell and James Powell were entitled to only qualified immunity against a claim of malicious prosecution with intent to violate the First Amendment. Because the District Court erred in denying absolute immunity to defendant Mitchell for actions taken in a prosecutorial role as Attorney General, we reverse that court's denial of his motion for judgment on the pleadings. However, we affirm the District Court's holding as to defendant Powell, since he should receive only qualified immunity for his actions taken while Chief of the Capitol Police.[1]

## I. BACKGROUND

The facts underlying this case have been detailed in prior decisions by this court. *Dellums v. Powell*, 566 F.2d 167; 566 F.2d 216; 566 F.2d 231 (D.C.Cir.1977). We will not repeat them except where necessary to address the issues that this appeal presents.

This civil action was brought on November 11, 1971 by U.S. Representative Ronald Dellums and nine other persons seeking to represent a class of all persons arrested on the steps of the U.S. Capitol on May 5, 1971 while engaged in a protest against the Vietnam War. Defendants included John N. Mitchell, then Attorney General of the United States, and James M. Powell, then Chief of the Capitol Police. The complaint alleged violations of various constitutional and common law rights. The case against

1. The District Court also held that both defendants enjoyed absolute immunity against a common law suit for malicious prosecution and it dismissed a malicious prosecution claim based on the Fifth Amendment. Appellees seek re-

view of these matters although they did not file a cross-appeal specifically raising their objections. For reasons given below, *infra* at n.6, we do not reach these issues.

Mr. Mitchell was severed and still awaits trial. The claims against Mr. Powell proceeded to trial before a jury, which held him liable for money damages for false arrest and false imprisonment, for violations of First Amendment rights, and for malicious prosecution.

On appeal, this court (a) affirmed Mr. Powell's liability for false arrest and false imprisonment; (b) affirmed his liability for violation of First Amendment rights, but vacated as excessive and remanded for redetermination the award of damages for the violation;[2] and (c) vacated the judgment against defendant Powell for malicious prosecution and remanded for a new trial on this portion of the verdict.[3]

On remand, defendant Powell moved for a judgment on the pleadings.[4] He was joined in this motion by Mr. Mitchell, who after his earlier severance now appears before this court for the first time in this action. The basis for the motion was an asserted defense of absolute official immunity from civil suit for malicious prosecution.

In dealing with the motion in its Memorandum Order and Opinion, the District Court distinguished three separate bases for the malicious prosecution cause of action. It granted defendants' motion as to a common law claim for malicious prosecution, and it refused to provide plaintiffs a damage remedy for malicious prosecution claims based on the Fifth Amendment. However, the District Court denied defendants' motion as to the plaintiffs' claim of malicious prosecution with intent to violate their First Amendment rights. *Dellums v. Powell*, 490 F.Supp. 70 (D.D.C.1980). Defendants Mitchell and Powell then brought this appeal challenging the denial.

■ The District Court's denial of a motion for summary judgment that is based on absolute immunity constitutes a final order appealable under 28 U.S.C. § 1291 (1976).[5] Thus, the narrow scope of issues this court must now address involves the claim of official immunity as to the alleged malicious prosecution with intent to violate the First Amendment.[6] In dealing with the

---

2. On remand, the parties agreed to this court's suggestion that damages for the First Amendment injuries should be set by the trial judge on the record adduced at trial. As a result, on December 13, 1979, the District Court entered an order fixing damages at $750.00 for each plaintiff class member.

3. While the court found "evidence from which the jury could have concluded that Chief Powell had procured the filing of informations by making misrepresentations to the prosecuting attorneys," *Dellums v. Powell*, 566 F.2d 167, 193 (D.C.Cir.1977), it concluded that the jury instructions had not explicated a relevant issue: the legal requirement that plaintiffs establish a causal chain between any misrepresentation by Powell and the U.S. Attorney's decision to prosecute.

4. The motion was filed on March 15, 1979.

5. *Briggs v. Goodwin*, 569 F.2d 10, 58–60 (D.C. Cir.1977) (Wilkey, J., writing separately for the court on appealability), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *McSurely v. McClellan*, 521 F.2d 1024, 1030–1032 (D.C.Cir.1975), *aff'd in pertinent part en banc*, 553 F.2d 1277, 1283–1284 n.18 (1977), *cert. dismissed*, 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978). *See also Forsyth v. Kleindienst*, 599 F.2d 1203, 1207–1209 (3d Cir. 1979).

6. Plaintiffs would also have us review the District Court's holding that defendants Mitchell and Powell enjoyed absolute immunity against a common law suit for malicious prosecution and that plaintiffs were not entitled to relief in damages for a malicious prosecution claim based on the Fifth Amendment. Although the District Court's disposition of these matters was not a final judgment, they nevertheless might be made the subject of review in conjunction with our review of defendants' appeal from the collateral order denying absolute immunity. *See IBM v. Levin*, 579 F.2d 271, 278 (3d Cir. 1978); *Hysell v. Iowa Pub. Serv. Co.*, 559 F.2d 468 (8th Cir. 1977); *Deckert v. Independence Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

Although we may have authority to review these other matters, this court need not and should not reach these issues at this time. The questions are difficult and have not been briefed by government counsel in this action. More significantly, the issues would be mooted by a possible trial court judgment awarding damages for malicious prosecution on a First Amendment theory. If plaintiffs do not prevail on that theory, the District Court's rulings on the common law and Fifth Amendment counts can always be considered by this court on an appeal from the final judgment.

District Court's denial of the motion, the status of defendant Mitchell should be distinguished from that of defendant Powell.

## II. ABSOLUTE IMMUNITY OF DEFENDANT MITCHELL

### A. *Immunity Principles*

In general, executive officials charged with constitutional violations are entitled to only qualified immunity from personal damages liability. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). However, the Supreme Court has recognized "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Id.* at 507, 98 S.Ct. at 2911. In identifying such situations, the Court has undertaken " 'a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' " *Id.* at 508, 98 S.Ct. at 2912 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976)).

The immunity of judges for acts within their jurisdiction has long existed at common law. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). The same considerations underlying the common-law immunity of judges provided the basis for a common law immunity of prosecutors. *Imbler v. Pachtman, supra*, 424 U.S. at 422–423, 96 S.Ct. at 991–92. Thus, prosecutors have been deemed "quasi-judicial" officers [7] entitled to the absolute immunity granted judges when their activities are "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 994–95.

Ample justification exists for the protection afforded to those making prosecutorial decisions.

The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424–425, 96 S.Ct. at 992.

In line with its origins, the scope of prosecutorial immunity is limited to performance of "quasi-judicial" functions. As this court has made clear, absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions. *Halperin v. Kissinger*, 606 F.2d 1192, 1208 (D.C.Cir.1979), *aff'd by equally divided Court per curiam*, —— U.S. ——, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981); *Briggs v. Goodwin*, 569 F.2d 10, 21 (D.C.Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *Apton v. Wilson*, 506 F.2d 83, 93 (D.C.Cir.1974). However, when a prosecutor is engaged "in initiating a prosecution," his absolute immunity from civil suit is firmly established. *Imbler v. Pachtman, supra*, 424 U.S. at 431, 96 S.Ct. at 995.[8]

### B. *Immunity of Defendant Mitchell*

Plaintiffs allege that defendant Mitchell is liable for malicious prosecution. In order to prevail on this claim, they must establish that the defendant "instituted" a criminal

---

**7.** "It is the functional comparability of their judgments to those of the judge that has resulted in * * * prosecutors being referred to as 'quasi-judicial' officers * * *." *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 96 S.Ct. 984, 991 n.20, 47 L.Ed.2d 128 (1976).

**8.** *Imbler* involved a suit under 42 U.S.C. § 1983 (1976) against a state official, whereas the suit against defendant Mitchell involves a federal official. This difference should not affect the immunity accorded the defendant. The Supreme Court has deemed it "untenable to draw a distinction for purposes of immunity law be-

tween suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). In any event, the same Court noted the extension of the principle of absolute immunity from judges to federal prosecutors through the summary affirmance in *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), *aff'g* 12 F.2d 396 (2d Cir. 1926). *See Butz v. Economou, supra*, 438 U.S. at 509, 98 S.Ct. at 2912.

action against them.[9] Yet, instituting a criminal action is precisely the sort of activity that falls within the scope of absolute immunity granted to a prosecuting official such as the Attorney General.[10] Indeed, in concluding that absolute immunity was the settled rule at common law, the Supreme Court did so in the context of suits for malicious prosecution. *Id.* at 421–424, 96 S.Ct. at 990–92.

The District Court attempted to distinguish this case from one where absolute immunity is appropriate by arguing that it presents "another twist." *Dellums v. Powell, supra,* 490 F.Supp. at 74. The plaintiffs do not allege merely a malicious prosecution, but rather a malicious prosecution with intent to violate the First Amendment. "When the state's machinery is misdirected for the express purpose of violating a substantive constitutional right, * * * no society-wide interest in law enforcement can outweigh the imperative of a remedy in the courts." *Id.*

If accepted, the District Court's reasoning would debilitate the defense of absolute immunity. Any allegation of a constitutional tort of malicious prosecution necessarily asserts a deliberate violation of constitutional liberties.[11] Nonetheless, in delineating the scope of absolute prosecutorial immunity, the Supreme Court has already

struck a balance against providing a remedy in such cases.

To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

*Imbler v. Pachtman, supra,* 424 U.S. at 427–428, 96 S.Ct. at 993–94.

In their brief,[12] plaintiffs seek to distinguish *Imbler v. Pachtman* by noting that it retained the standard of qualified immunity for actions taken in an administrative or investigative capacity. *See id.* at 430–431, 96 S.Ct. at 995. However, the cases cited by plaintiffs involving this exception to the general rule of absolute immunity involved a prosecuting official's authorization of illegal investigative techniques, *Halperin v. Kissinger, supra,* his administrative orders to execute unlawful arrests, *Apton v. Wilson, supra,* and his giving a knowingly false answer to a district judge's question, *Briggs v. Goodwin, supra.* Never has a prosecutorial official been held liable for causing a prosecution to be brought.[13]

---

9. This is one of four elements of malicious prosecution. *Dellums v. Powell, supra* note 3, 566 F.2d at 191 n.65.

10. While an Attorney General's responsibilities obviously extend beyond the mere initiation of criminal suits, *see, e. g.,* 28 U.S.C. §§ 511–513 (1976) (Attorney General charged with duty of giving legal advice to the President, to the heads of other executive departments, and to the Secretaries of the military departments); *id.* § 524 (Attorney General authorizes rates of compensation of witnesses and informants), the Attorney General still performs functions that have led to his characterization as the nation's chief prosecutor. *See id.* § 519 (Attorney General charged with the direction of all U.S. Attorneys and Assistant U.S. Attorneys in the discharge of their respective duties); *id.* § 547(1) (each U.S. Attorney is in turn responsible for prosecution of all offenses against the United States).

11. Moreover, as the District Judge seemed to realize, it would be relatively easy to convert any charge of malicious prosecution into a constitutional claim. *Dellums v. Powell,* 490 F.Supp. 70, 72 (D.D.C.1980).

12. Brief of Appellees at 19–20.

13. Plaintiffs also argue that defendant Mitchell "conspired to cause" the U.S. Attorney to prosecute, but that he did not participate in the actual prosecution. *Id.* at 18. This distinction makes no difference to the determination of immunity. So long as the Attorney General is initiating or instituting a prosecution, he is absolutely immune. Indeed, by the issuance of general instructions the Attorney General may be causally responsible for the initiation of prosecutions against members of various groups, such as mobsters, white-collar criminals, or labor union officials believed to be corrupt. Such instructions can issue from conversations with subordinate officials of the Jus-

In a suit for malicious prosecution, defendant Mitchell is therefore entitled to absolute immunity. Since the District Court's denial of defendant Mitchell's motion for judgment on the pleadings was premised on a rejection of absolute immunity, its decision should be reversed.

## III. QUALIFIED IMMUNITY OF DEFENDANT POWELL

The District Court held that defendant Powell was entitled to only qualified immunity for his actions as Chief of the Capitol Police.[14] As a result, it denied his motion for judgment on the pleadings. Defendant Powell appeals the denial, arguing that he should receive absolute immunity. As the Supreme Court has stated, "the burden is on the official claiming immunity to demonstrate his entitlement." *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980).[15] Defendant Powell has failed to meet this burden.

### A. *Absolute Immunity as a Witness*

Defendant Powell bases his claim to absolute immunity on cases affording absolute immunity to witnesses. *See* Brief of Appellants at 16–21. An absolute immunity for witnesses testifying in judicial proceedings was the general rule at common law. *See Brawer v. Horowitz,* 535 F.2d 830, 836–837 (3d Cir. 1976); *Imbler v. Pachtman, supra,* 424 U.S. at 439, 96 S.Ct. at 999 (White, J.,

concurring); 1 F. Harper & F. James, The Law of Torts § 5.22, at 423–426 (1956). *Cf. Briggs v. Goodwin, supra,* 569 F.2d at 27 (immunity of witnesses at common law not "monolithic"). The Supreme Court has indicated that witnesses also deserve absolute immunity from suits alleging constitutional violations. *See Butz v. Economou, supra,* 438 U.S. at 512, 98 S.Ct. at 2913 ("Absolute immunity is thus necessary to assure that judges, advocates, and *witnesses* can perform their respective functions without harassment or intimidation.") (emphasis added). The only Court of Appeals decision ruling directly on this issue has extended common-law witness immunity to actions involving constitutional deprivations. *Brawer v. Horowitz, supra,* 535 F.2d at 836–837.

In this case, however, defendant Powell's liability is predicated not on his testimony at trial but rather on his earlier statements to an Assistant U.S. Attorney, which allegedly resulted in the government's decision to prosecute. *See* Brief of Appellees at 17, 23. This context renders inapposite the witness immunity cases on which defendant Powell relies.[16] Instead, the issue at stake in this appeal is whether defendant Powell enjoys absolute immunity from suit for his *out-of-court* communications with a prosecutor. In addressing this question, as with any claim of absolute immunity, our inquiry necessarily focuses on

---

tice Department. These conversations could, within the theory advanced by plaintiffs in this case, be characterized as constituting a "conspiracy" to initiate a malicious prosecution. To subject an Attorney General to suits of this kind would surely offend the principles of *Imbler v. Pachtman.*

**14.** This holding, like that for defendant Mitchell, was based on the fact that plaintiffs had alleged an intentional violation of a constitutional right. *Dellums v. Powell, supra,* 490 F.Supp. 70, 74 (D.D.C.1980). We do not think that the nature of the alleged constitutional violation should determine the degree of immunity defendant Powell receives, for the same reason we reject this analysis when applied to defendant Mitchell. *Supra* at 806. Nonetheless, we affirm the District Court's holding for other reasons.

**15.** *See also Butz v. Economou, supra* note 8, 438 U.S. at 506, 98 S.Ct. at 2910. ("[F]ederal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope.")

**16.** In Appellants' Brief at 20, defendant Powell also relies on a portion of *Yaselli v. Goff, supra* note 8, which is in fact a quotation from *Smith v. Parman,* 101 Kan. 115, 165 P. 663 (1917). Both of these cases involved the immunity of public prosecutors. The *Smith* language comes in part from *Michael v. Mathson,* 81 Kan. 360, 366, 105 P. 537, 540 (1909). That case, however, dealt with admissibility of evidence and an asserted privilege based on communications with a district attorney. None of these cases bear much relevance to defendant Powell's claim of absolute immunity in this case.

the immunity granted at common law and on the interests behind it. *See Butz v. Economou, supra*, 438 U.S. at 508, 98 S.Ct. at 2911–12 (quoting *Imbler v. Pachtman, supra*, 424 U.S. at 421, 96 S.Ct. at 990).

At common law, the immunity attaching to those making out-of-court statements to prosecuting officials varied. 1 F. Harper & F. James, *supra*, § 522, at 424 (cases "not uniform" in their results). One synthesis of modern authority suggests that the absolute immunity of prosecutors "does not apply to all persons whose function it is to aid in the enforcement of the criminal law" and thus does not apply to a "peace officer." RESTATEMENT (SECOND) OF TORTS § 656, comment d (1965). So, while some common-law support exists for the kind of absolute immunity that defendant Powell seeks, there is strong conflicting authority.

As for the interests underlying the claim to immunity in this case, the need to deter official misconduct heavily favors a standard of qualified immunity. In contrast to situations where absolute immunity has been upheld, few safeguards against official misconduct exist when a police officer makes out-of-court statements to a prosecutor. In contrast to a witness at trial, a police officer making out-of-court statements is not subject to the rigors of cross-examination or the threat of a perjury conviction. *Cf. Butz v. Economou, supra*, 438 U.S. at 512, 98 S.Ct. at 2913–14. Unlike a judge, a police officer is not insulated from the political process or from pressures to please superiors. In the absence of such protections, the need for a damage remedy is paramount.

At the same time, a qualified immunity should not have a disruptive effect on the normal functioning of the criminal justice system. A police officer who orders an arrest in bad faith is already subject to a suit for false arrest. *See, e.g., Dellums v. Powell, supra*, 566 F.2d 167. The threat of an additional suit is unlikely to deter him from then taking his evidence to a prosecutor. In addition, denial of absolute immunity from suit for malicious prosecution is unlikely to increase vexatious litigation by any substantial degree. Angry defendants seeking retaliation can already sue for damages for arrests or other violations undertaken maliciously and in bad faith. *See, e.g., id.* It would be anomalous to provide only qualified immunity for these sorts of acts while granting absolute immunity to defendant Powell's alleged actions.

### B. A Qualified Immunity Standard

Rejection of absolute immunity for defendant Powell's actions hardly leaves him defenseless. Indeed, a standard of qualified immunity provides a formidable defense. If he can show that he had reasonable grounds for believing that his actions were legal (the "objective" basis) and that there was no malice or bad faith in his conduct (the "subjective" basis), he will be entitled to immunity. *See Halperin v. Kissinger, supra*, 606 F.2d at 1208. Under applicable standards, defendant Powell deserves no greater protection than this for his out-of-court communications.

Insofar as the District Court rejected defendant Powell's claim to absolute immunity and denied his motion for judgment on the pleadings, its decision should therefore be affirmed.

### IV. CONCLUSION

Accordingly, the judgment of the District Court is reversed in part and affirmed in part.

HARRY T. EDWARDS, Circuit Judge, dissenting:

I dissent from the majority opinion to the extent that it holds that former Attorney General Mitchell is entitled to absolute immunity from liability as to the constitutional actions for malicious prosecution. I would affirm the judgment of the District Court holding that, in this case, Mr. Mitchell can only assert a claim of qualified immunity.

The majority opinion appears to suggest that, because appellees' cause of action is founded on a claim of malicious prosecution, the suit against Mr. Mitchell must of neces-

sity relate to "prosecutorial" (as opposed to investigative and administrative) functions performed by Mr. Mitchell as the Attorney General. I reject this suggestion.

It is of course well-recognized that the Attorney General is entitled to absolute immunity with respect to *prosecutorial* acts taken within the scope of his duties. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, as was noted in *Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir. 1979), *cert. denied sub nom Mitchell v. Forsyth*, —— U.S. ——, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1980).

> *Imbler v. Pachtman* . . . utilized a functional approach. It suggested that even a prosecuting attorney would not be absolutely immune from suit for actions which are not closely connected with the judicial process. The Supreme Court's holding was narrow: "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. at 431, 96 S.Ct. at 995. The Court emphasized that the prosecutor's activities "were intimately associated with the judicial phase of the criminal process," and therefore, were "functions to which the reasons for absolute immunity apply with full force." *Id.* at 430, 96 S.Ct. at 995.

*Id.* at 1213. Numerous other decisions, handed down both before and after the decision in *Imbler*, have distinguished between a prosecutor's "quasi-judicial functions on the one hand and his investigative and administrative functions on the other, granting absolute immunity to the former and relegating the latter to qualified immunity." *Id.* at 1213–14.

Of particular note is the decision of this court in *Apton v. Wilson*, 506 F.2d 83 (D.C. Cir.1974), holding that the Attorney General was not entitled absolute immunity for his part in directing the activities of the police in Washington, D.C. during the "May Day" demonstrations in 1971.[1] Anticipat-

ing *Imbler* by two years, Judge Leventhal wrote for the court that:

> In arguing for absolute immunity, the defendants stress the particular duties of the Attorney General, especially his broad supervisory responsibilities over much of the Federal criminal justice system. The Attorney General is on occasion referred to as the nation's "chief prosecutor" as a kind of journalistic shorthand. However, the absolute immunity often accorded prosecuting attorneys cannot shield the defendants in this case, for the prosecutor's absolute protection, like that of the judge from which it is derived, is both justified and bounded by the judicial traditions and procedures that limit and contain the danger of abuse.

> \*  \*  \*  \*  \*  \*

> [S]uch an extension of judicial immunity would not encompass the executive action complained of here—the making of decisions establishing policy as to clearing streets, making arrests, and confining those detained—for no comparable safeguards accompany them.

506 F.2d at 93–94 (footnotes omitted).

Following *Imbler*, this court once again ruled, in *Briggs v. Goodwin*, 569 F.2d 10 (D.C.Cir.1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), that a prosecutor who was not involved in a prosecutorial/advocacy role was not shielded by absolute immunity. The court in *Briggs* recognized that absolute immunity

> extends only so far as necessary to protect a prosecutor's decision with respect to the initiation and conduct of particular cases. *Imbler* does not, in our reading, immunize prosecutors for any and all measures they may undertake in the course of wide-ranging law enforcement investigations or general fact-finding expeditions.

569 F.2d at 19–20. *See also Tigue v. Swaim*, 585 F.2d 909 (8th Cir. 1978); *Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir. 1974);

---

1. The May Day activities referred to in *Apton* are very similar to the activities complained of in this case.

*Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

In my view, the opinion of the majority in this case is inconsistent with this well-established precedent holding that the Attorney General is not always entitled to absolute immunity. In particular, the majority fails to recognize that "where the activities of the Attorney General depart from those which cast him in his quasi-judicial role, the protection of absolute immunity will not be available." *Forsyth v. Kleindienst*, 599 F.2d at 1214–15.

In the instant case, appellees have alleged that

> ... Mr. Mitchell is liable for malicious prosecution because he conspired, with Chief Powell and others, to cause groundless criminal prosecution of plaintiffs in knowing violation of plaintiff's Fifth Amendment rights, and for the purpose of preventing them from exercising their First Amendment right.

> \*     \*     \*     \*     \*     \*

> Although John Mitchell conspired to cause [Assistant United States Attorney] Moore to prosecute the plaintiffs, he himself neither participated in the actual prosecution of the case, nor performed any advocacy function in connection with the prosecution.

Appellees' brief at 16, 18. I can find nothing in the record of this case to suggest that appellees' claim is directed at any of the "prosecutorial" or "advocacy" activities of the Attorney General, nor can I find any indication that the activities complained of in fact involved some prosecutorial or advocacy function performed by Mr. Mitchell in his role as Attorney General.

I also reject the suggestion made in the majority opinion that the nature of the charge, *i. e.* malicious prosecution, is somehow determinative of the issue of whether the former Attorney General was perform-ing prosecutorial/advocacy functions. Assuming that the other elements of the tort are met, a person may be liable for malicious prosecution if "he advises or assists another person to begin the [criminal] proceeding...." Prosser, Law of Torts § 119, at 837 (4th ed. 1971).[2] This is precisely what Mr. Mitchell has been accused of in this case. It does not matter that, as Attorney General, Mr. Mitchell sometimes served as prosecutor/advocate. The claim here is that he sought not to act as prosecutor or advocate, but to conspire to cause the United States Attorney to act against the plaintiffs. This satisfies one of the elements of the common law tort of malicious prosecution and it takes Mr. Mitchell outside of the bounds of absolute immunity.

Finally, I reject the suggestion that Mr. Mitchell was shielded by absolute immunity by virtue of the *position* that he held. Indeed, this suggestion was specifically rejected in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where the Supreme Court noted that:

> Judges have absolute immunity not because of their particular location within the Government, but because of the special nature of their responsibilities .... "It is the functional comparability of [the prosecutor's] judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well."

*Id.* at 511–12, 98 S.Ct. at 2913. Similarly, in *Forsyth* it was aptly observed that

> the Attorney General cannot effectively contend that his functions are coextensive with those of a prosecuting attorney. Though as a shorthand expression he has been called the nation's "chief prosecuting attorney," his duties and responsibilities are far greater than those of the ordinary prosecutor. The distinction is important because the Supreme Court in

---

**2.** In *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) we stated that

> [m]alicious prosecution has four elements: (1) the defendant must be found to have instituted a criminal action against the plain-tiff; (2) that prosecution must have ended in the plaintiff's favor; (3) there must have been no probable cause to initiate the criminal proceeding; and (4) the defendant must have acted maliciously.

> *Id.* at 191 n.65.

*Butz* and *Imbler* intended a functional test rather than one based on status or title. *Butz* particularly stressed the need to make an inquiry into the particular decision challenged to determine whether an official is entitled to absolute immunity.

599 F.2d at 1212 (footnote omitted). Absolute immunity is granted to prosecutors only where it is essential to protect the integrity of the judicial process, *i. e.* where prosecutors are performing quasi-judicial functions. No such claim can be made with respect to the alleged actions of Mr. Mitchell in this case.

The District Court specifically found that Mr. Mitchell did "not fall within the 'initiating a prosecution and presenting the State's case' scope of *Imbler v. Pachtman*, 424 U.S. 409, 431 [96 S.Ct. 984, 995–96, 47 L.Ed.2d 128] (1976)." Memorandum and Order dated February 20, 1980, *reprinted in* Appendix (App.) at 59, 64. On the facts of this case, that finding was fully justified and should not be set aside by this court.[3] This being so, the judgment of the District Court denying the request for absolute immunity should be affirmed.

---

**3.** The District Court order merely served to deny Mr. Mitchell's motion for a *judgment on the pleadings* based on his claim of absolute immunity. The Court recognized that "[w]hether Mr. Mitchell can avail himself of a prosecutorial immunity defense must await further development of the facts in the case." App. at 65, n.5.