William G. **MOORE, Jr.,** Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

William G. Moore, Jr., Appellant,

v.

**Joseph B. Valder,** Appellee.

Nos. 99–5197 & 99–5198.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 13, 2000.

Decided June 2, 2000.

---

Paul M. Pohl argued the cause for appellant. With him on the briefs were Bryan D. Kocher, Daniel H. Bromberg, and James E. Anklam.

Richard Montague, Trial Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Andrea W. McCarthy, Senior Trial Counsel, and Wilma A. Lewis, U.S. Attorney.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Our first opinion in this case affirmed in part and reversed in part the district court's dismissal of William G. Moore, Jr.'s complaint against a prosecutor and postal inspectors and his complaint against the United States. *See Moore v. Valder*, 65

F.3d 189 (D.C.Cir.1995). On remand, the district court again dismissed the claims against the prosecutor, Joseph B. Valder, and granted judgment on the pleadings in favor of the government, rulings from which Moore now appeals.

## I.

Moore's basic grievance is that he was unjustly prosecuted on charges concerning his dealings with the United States Postal Service. In the early 1980s, the company Moore headed—REI—wanted to sell the Postal Service multiple-line scanners, but the Service declined. Moore publicly criticized the decision. A Postal Service governor—Peter Voss—suggested to REI that it hire the consulting firm GAI to promote its product. REI did so. Voss had a side deal with GAI: thirty percent of the fees REI paid to the consulting firm were kicked back to Voss. After their crimes were discovered, Voss and several GAI officials plead guilty. William A. Spartin, GAI's president, negotiated an immunity deal in return for his cooperation.

Postal inspectors and prosecutor Valder, seeking to establish that Moore and REI knew of the kickback scheme, were told instead by each of five of the admitted conspirators, including Spartin, that no one at REI had such knowledge. The postal inspectors later drafted, and the prosecutor presented to the grand jury, "witness statements" for these individuals, but without this exculpatory information. Spartin's refusal to implicate Moore prompted Valder to tear up his immunity agreement and threaten to prosecute Spartin's son. Valder and the postal inspectors showed Spartin the government-drafted statements of the other witnesses. (Moore alleges this disclosure was a violation of grand jury secrecy rules.) Spartin continued to deny that he had personal knowledge of Moore's involvement, repeating the point nineteen times during a polygraph test. Spartin then said "I have no knowledge of that at all.... But, you know, I read that goddam[n] testimony and I'm not a lawyer but Jesus, there's enough there to seem to me to hang REI from the yardarm." Spartin then testified before the grand jury that in his "opinion" Moore knew of the kickback scheme.

Postal inspectors also provided witness interview statements and lab results to Paul Carlin, a former Postmaster General dismissed by the Board of Governors during the scanner controversy. Then, weeks before an indictment was returned against Moore, the inspectors passed along a draft indictment to Carlin. Carlin later filed a civil RICO claim against Moore, alleging that Moore conspired to have the Board dismiss him.

Moore, REI Vice President Robert Reedy, and REI were indicted by a federal grand jury in the District of Columbia in October 1988 for conspiracy to defraud the United States, theft, receipt of stolen property, mail fraud and wire fraud. Despite a court order to turn over even "borderline" *Brady* evidence, Valder failed to provide the defense with exculpatory material, including the Spartin lie detector results and the amended statement of one witness denying any knowledge that REI officials were aware of the kickbacks. The district court granted Moore's motion for judgment of acquittal at the close of the government's case, stating that "[m]uch of what the government characterizes as incriminatory evidence is not persuasive of guilt when viewed in its full context [and] some of the government's evidence is exculpatory and points toward innocent conduct...." *United States v. Recognition Equip., Inc.,* 725 F.Supp. 587, 587–88 (D.D.C.1989).

Moore then brought his suits against Valder and the postal inspectors under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and against the United States under the Federal Torts Claims Act (FTCA), *see* 28 U.S.C. §§ 2671–2680. After proceedings unnecessary to recount, the district court dismissed the complaints and Moore ap-

pealed. This court considered whether, as the district court determined, Valder enjoyed absolute immunity from civil liability for malicious prosecution and for retaliatory prosecution.[1] *See Moore*, 65 F.3d at 192–95. Relying on the Supreme Court's distinction between a prosecutor's role as an advocate and his conduct as an investigator, *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the court decided that absolute immunity shielded some, but not all, of Valder's conduct. Absolute immunity protected Valder from liability for his "decision to prosecute Moore," "for allegedly concealing exculpatory evidence from the grand jury," "for allegedly manipulating evidence before the grand jury to create a false impression of what Moore knew about the alleged fraudulent schemes," and for failing to disclose exculpatory material before trial. 65 F.3d at 194. But absolute immunity did not apply to Valder's "[i]ntimidating and coercing witnesses into changing their testimony" or "disclosing grand jury information to unauthorized third parties." *Id.* at 194–95.

With respect to Moore's claims under the Federal Tort Claims Act, the court took note of the FTCA's "discretionary function" exception, which protects the government from liability for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government...." 28 U.S.C. § 2680(a). The following alleged conduct fell within the exception: "Deciding whether to prosecute, assessing a witness's credibility to ensure that he is giving an accurate and complete account of what he knows, identifying the evidence to submit to the grand jury and determining whether information is 'exculpatory' and 'material' and therefore must be disclosed pursuant to a *Brady* request." 65 F.3d at

197. "Disclosing grand jury testimony to unauthorized third parties, however, is *not* a discretionary activity nor is it inextricably tied to matters requiring the exercise of discretion." *Id.*

On remand, Valder moved for summary judgment on the retaliatory prosecution claim, contending that Moore could not make out an essential element—that he brought the prosecution at least in part to retaliate against Moore's First Amendment activity—because absolute immunity protected his decision to prosecute Moore. The district court agreed and granted Valder's motion. *See Moore v. Valder*, No.92CV–2288, memorandum opinion at 17–24 (D.D.C. Feb. 5, 1998) ("mem. op.").

As to the FTCA claims, the district court determined that only one aspect of Moore's complaint survived this court's application of the discretionary function exception—namely, the claim that "AUSA Valder and the Postal Inspectors violated Federal Rule of Criminal Procedure 6(e)(2) ... by giving Spartin and former Postmaster General Paul Carlin access to the Grand Jury testimony of other witnesses for the purpose of influencing Spartin's testimony and for the apparent purpose of assisting Carlin, a private plaintiff, to pursue civil litigation...." FTCA Complaint ¶ 26. Moore argued that these two grand jury disclosures were sufficient to make out his malicious prosecution and abuse-of-process claims. Under the FTCA, however, claims of malicious prosecution and abuse of process can only arise from the conduct of "investigative or law enforcement officers of the United States government." *See* 28 U.S.C. § 2680(h). " '[I]nvestigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Postal inspectors are so empowered, *see* 39 C.F.R. § 233.1, but the district court concluded that federal prosecutors are not, *see* mem. op. at 32 & n.21 (citing *Bernard v.*

---

1. Moore did not appeal the dismissal of his other *Bivens* claims. *See* 65 F.3d at 191 n. 3.

*United States,* 25 F.3d 98 (2d Cir.1994); *Gray v. Bell,* 542 F.Supp. 927, 932 (D.D.C. 1982), *aff'd,* 712 F.2d 490 (D.C.Cir.1983)). The district court then ruled that the unprotected conduct of the postal inspectors did not establish a malicious prosecution or abuse-of-process claim and granted judgment in favor of the United States under Federal Rule of Civil Procedure 12(c). *See* mem. op. at 32–43.

## II.

■ Two of the elements of a claim of retaliatory prosecution are "first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct." *Haynesworth v. Miller,* 820 F.2d 1245, 1256 n. 93 (D.C.Cir.1987) (quoting *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir.1979)). Moore thinks the ground of the district court's dismissal of his claim— that absolute immunity protected Valder with respect to his decision to prosecute— contravened this court's initial decision, in violation of the mandate. *See LaShawn A. v. Barry,* 87 F.3d 1389, 1393 n. 3 (D.C.Cir. 1996) (en banc). The prior opinion did hold that some of Valder's conduct was not protected by absolute immunity and the court did remand the retaliatory prosecution claim. But that opinion said nothing about the elements of such a claim, or whether Moore could succeed on his complaint. Rather than dealing with those subjects, the opinion focused on the type of prosecutorial conduct for which there would be absolute immunity. One such type of conduct, of course, was "the decision to prosecute Moore." 65 F.3d at 192.

In his brief for that appeal, Valder had argued that if he had immunity for his prosecutorial decision, then Moore's retaliatory prosecution claim could not go forward. But it is clear to us that the court did not pass judgment on the argument, explicitly or implicitly. It follows that the district court did not contravene the mandate of this court.

■ According to Moore the district court erred for another reason. As he sees it, his retaliatory prosecution claim is not predicated upon Valder's decision to prosecute him. Just as a police officer can be liable for malicious prosecution as a result of his investigatory conduct leading to the prosecution, so too, Moore contends, should a prosecutor be liable if his investigatory conduct leads to the prosecution. *See infra* Part IIIA. The problem for Moore is that we rejected this very argument in *Dellums v. Powell,* 660 F.2d 802, 805–07 (D.C.Cir.1981) ("*Dellums II*"). A "prosecutorial official," we ruled, could not be "held liable for causing a prosecution to be brought," despite the fact that *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), extended only qualified immunity to prosecutors acting in an investigatory capacity.[2] 660 F.2d at 806. Moore believes the law has changed since *Dellums II,* but he cites no cases in which a prosecutor has been held liable for malicious or retaliatory prosecution. If a prosecutor cannot be sued for malicious or retaliatory prosecution, Moore asks, why would the Supreme Court continue to devote its time to discerning which prosecutorial actions are protected by absolute immunity and which are not? *See Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125

---

**2.** It may seem odd that the only official who could not be held liable for malicious or retaliatory prosecution is the prosecutor. A similar point was made in *Imbler,* to which the Court responded with a quotation: "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Imbler,* 424 U.S. at 428, 96 S.Ct. 984 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949) (Hand, J.)).

L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The answer is that there are potential causes of actions against prosecutors that do not rely on the decision to prosecute. A violation of the Fourth Amendment is one of the more obvious examples.

We therefore will affirm the dismissal of Moore's *Bivens* claim against Valder.[3]

### III.

With respect to Moore's FTCA action against the United States for malicious prosecution and abuse of process, "the law of the place where the act or omission occurred" is controlling. 28 U.S.C. § 1346(b). All agree that District of Columbia law must be consulted. *See Tarpeh–Doe v. United States,* 28 F.3d 120, 123 (D.C.Cir.1994).

### A. Malicious Prosecution

■ Under local law four elements make up the tort of malicious prosecution: (1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff; (2) absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff. *See Davis v. Giles,* 769 F.2d 813, 814–15 (D.C.Cir.1985) (citing RESTATEMENT (SECOND) OF TORTS § 653 (1977)). As the first element indicates, in theory not only the prosecutor who initiates criminal proceedings, but also a person who "procures" a criminal proceeding may be liable for mali-

cious prosecution. *See also* RESTATEMENT (SECOND) OF TORTS § 653. In fact, those who procure malicious prosecutions are usually the only potential defendants because, as here, prosecutors enjoy absolute immunity. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 119, at 873 (5th ed.1984). To succeed in this case, Moore must rely on the procurement component of the first element, focusing on the conduct of the postal inspectors in disclosing grand jury material. The remainder of the postal inspectors' conduct fell within the FTCA's discretionary function exception, *see* 65 F.3d at 197, and none of Valder's conduct can be the basis for a malicious prosecution claim against the government because he is not an investigative or law enforcement officer, *see* 28 U.S.C. § 2680(h).

■ In order to find that a defendant procured a prosecution, the plaintiff must establish "a chain of causation" linking the defendant's actions with the initiation of criminal proceedings. *Dellums v. Powell,* 566 F.2d 167, 192 (D.C.Cir.1977) (*"Dellums I"*). Moore's chain consisted of the postal inspectors' releasing of grand jury testimony to Spartin, which caused Spartin to incriminate him, which led to his indictment and then his prosecution.[4] *See* mem. op. at 36; FTCA Complaint ¶ 26.

It may be helpful at this point to look more closely at *Dellums I* and the chain of causation there held sufficient to establish procurement of a prosecution. Plaintiffs had won a verdict against Powell, the D.C.

---

**3.** Moore also contends that the district court improperly denied his request for discovery. But a district court may deny discovery requests when additional facts are not necessary to resolve the summary judgment motion. *See White v. Fraternal Order of Police,* 909 F.2d 512, 516–17 (D.C.Cir.1990) (en banc).

**4.** In his brief, Moore stated only that Valder disclosed grand jury material to Spartin, though he mentions that the inspectors were present at the time. *See* Brief for Appellant at 10. The government jumps on this to argue that Moore's claim had to be dismissed be-

cause a malicious prosecution claim under the FTCA can rely only on the conduct of investigative or law enforcement officers and Valder is not one. Moore's complaint, however, alleged that "AUSA Valder *and the Postal Inspectors* violated Federal Rule of Criminal Procedure 6(e)(2) ... by giving Spartin and former Postmaster General Carlin access to the Grand Jury testimony of other witnesses...." FTCA Complaint ¶ 26 (italics added). We therefore assume that the postal inspectors did play a role in presenting grand jury materials to Spartin.

Police Chief, for his role in bringing about criminal charges against anti-war demonstrators. *See* 566 F.2d at 173–75, 193. The court noted that the "chain of causation" would have been broken if the decision to prosecute was "independent of any pressure or influence exerted by Powell and of any knowing misstatements which Powell may have made" to the prosecutors. *Id.* at 192–93. But Powell had knowingly misled the prosecutors when he failed to disclose the fact that the demonstrators were "peaceful" and "not that disorderly." *Id.* at 193. This was sufficient evidence "from which the jury could have concluded that Chief Powell had procured the filing of informations...."[5] *Id.*

We see two distinctions between Moore's case and *Dellums I*. The first is that the postal inspectors themselves did not make the misrepresentations, but allegedly caused Spartin to make them. The district court did not rely on this distinction and we think its effect is only to require Moore to prove an additional link: but for the postal inspectors' disclosure of grand jury testimony to Spartin, he would not have implicated Moore before the grand jury. *See* KEETON ET AL. § 119, at 873 (stating that significant "second-hand" involvement in instigating a prosecution is sufficient).

 The second distinction is that the misleading information was presented to the grand jury. The district court made much of this: "Moore has alleged only that the postal inspectors influenced the grand jury's decision to indict ... Moore's allegations ignore the fact that malicious prosecution requires the initiation of a prosecution by the Executive Branch, not the grand jury. Even if this Court could determine that Spartin's testimony 'caused' the indictment, this would not satisfy the first element because a grand jury indictment cannot by itself initiate a prosecution." Mem. op. at 36–37 (footnotes omitted). We do not believe this accurately reflects District of Columbia law set forth

in *Davis v. Giles*. A criminal proceeding is a prerequisite to the malicious prosecution tort. If the proceeding starts with a grand jury indictment and the defendant procured the indictment, the first element of the tort is satisfied. When "an indictment is found by a grand jury ... the return of the indictment ... marks the institution of the proceedings." RESTATEMENT (SECOND) OF TORTS § 654 cmt. c; *see* KEETON ET AL. § 119, at 871–72 ("The initial step is of course a matter of the procedure of the particular jurisdiction; and where prosecution is begun by an indictment, or an information filed by the prosecuting attorney, it seems clear that this should be enough, since it constitutes official action and sets the law in motion.").

The government argues that because later actions—the presentation of evidence to the grand jury, for instance—were protected, Moore's case collapses. The district court seemed to agree. *See* mem. op. at 37. If this were enough to break the chain of causation, if the "discretionary function" of presenting evidence to the grand jury or prosecuting the plaintiff shielded prior misconduct from liability, a plaintiff would never be able to make out a malicious prosecution claim against the government. Yet the FTCA specifically recognizes the tort of malicious prosecution. *See* 28 U.S.C. § 2680(h). We think it follows that although a plaintiff may not rely on an official's alleged misconduct during the exercise of discretionary functions, this does not immunize earlier, unprotected misconduct from ordinary principles of tort liability. *Cf. Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988); RESTATEMENT (SECOND) OF TORTS § 653 cmt. g.

For similar reasons we disagree with the district court that Valder's continuation of the prosecution after the indictment came down constituted an independent act that broke the causal chain. *See* mem. op. at 37. Without the indictment the prosecu-

---

**5.** The court ordered a new trial, however, because of improper jury instructions. *See id.*

tion could not have continued. *See* FED. R.CRIM.P. 7(a). As we have said, if a prosecutor's continuation of a prosecution automatically immunizes prior steps in the prosecution, then the whole notion of liability for maliciously "procuring" a prosecution would disappear. "[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones v. City of Chicago,* 856 F.2d at 994 (citing, among other cases, *Dellums I,* 566 F.2d at 192–94); *accord* RESTATEMENT (SECOND) OF TORTS § 653 cmt. g. On the other hand, if Moore would have been indicted and prosecuted anyway, even without the postal inspectors' alleged misconduct and Spartin's testimony, then the United States cannot be held liable. *See Jones,* 856 F.2d at 993. Since the case is still at the pleading stage, there is no telling how the evidence will turn out. All that concerns us now is that the complaint sufficiently set forth the first element of the malicious prosecution tort. *See Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir. 2000).

### B. Abuse of Process

■ Under District of Columbia law, abuse of process occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A.2d 710, 711 (D.C.1967) (citing 1 AM.JUR.2D *Abuse of Process* § 4 (1962)). Local courts have emphasized that "[t]he critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law...." *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C.1980); *accord Bown v. Ham-*

*ilton,* 601 A.2d 1074, 1079 (D.C.1992); *see also Heck v. Humphrey,* 512 U.S. 477, 486 n. 5, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Scott v. District of Columbia,* 101 F.3d 748, 755 (D.C.Cir.1997) ("The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process....' " (quoting *Bown v. Hamilton,* 601 A.2d 1074, 1079 (D.C.1992))). The Restatement also focuses on this element of the tort: "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." RE- STATEMENT (SECOND) OF TORTS § 682 cmt. b.

■ Moore's complaint failed to allege this critical element of the abuse-of-process tort and, for this reason, the district court properly rendered a judgment on the pleadings in favor of the government. The only paragraph in the complaint dealing with this tort alleged the following: "AUSA Valder and the Postal Inspectors violated Federal Rule of Criminal Procedure 6(e)(2), which protects the secrecy of Grand Jury proceedings, by giving Spartin and former Postmaster General Carlin access to the Grand Jury testimony of other witnesses for the purpose of influencing Spartin's testimony and for the apparent purpose of assisting Carlin, a private plaintiff, to pursue civil litigation in connection with his dismissal from the Postal Service. The Postal Inspectors even gave Carlin a copy of a draft indictment for his review." FTCA Complaint ¶ 26. As Moore sees it, his allegations regarding Carlin are sufficient to make out a cause of action. But nothing in paragraph 26 of the complaint speaks of *using* the grand jury process for the purpose, immediate or otherwise, of obtaining evidence to assist Carlin in bringing a civil suit. The paragraph alleges only that the postal inspectors disclosed witness testimony and the draft indictment to Carlin.[6]

---

**6.** Given that the indictment became public, we do not see how letting Carlin look at the

draft could have damaged Moore unless the draft contained information omitted from the

Disclosing information is a far cry from *using* the grand jury to assist Carlin's civil litigation. If the complaint is true, the postal inspectors violated the secrecy of the grand jury. But that does not, in itself, constitute abuse of process. The "process" here is the grand jury and the tort is made out only if the grand jury is misused. Because Moore does not allege the "critical concern" of abuse-of-process law—that the inspectors *used* the grand jury for an improper purpose—we affirm the judgment of the district court.[7]

*Affirmed in part and reversed in part.*

final version. We shall assume that the draft contained such information and that it was grand jury material.

7. We recognize that on Rule 12(c) motions "[w]e 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C.Cir.1992) (quoting *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.1988)). Even if we were to stretch this principle beyond its ordinary confines and infer that the postal inspectors somehow used the grand jury process for the purpose of obtaining evidence that they passed along to Carlin, Moore still could not

make out an abuse-of-process claim. For one thing, Moore cannot base his abuse-of-process claim on the presentation of evidence to the grand jury—that is a discretionary function immune from suit under the FTCA. *See Moore*, 65 F.3d at 197; *see also Doe v. Stephens*, 851 F.2d 1457, 1462–63 (D.C.Cir.1988) (causing a grand jury subpoena to issue falls within discretionary function exception). For another, prosecutors, not postal inspectors, convene and conduct grand jury proceedings—and the actions of a prosecutor cannot give rise to an abuse-of-process claim under the FTCA. *See* mem. op. at 32 & n.21 (citing 28 U.S.C. § 2680(h)).