# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 16, 2009          Decided July 7, 2009

No. 08-5370

WILLIAM G. MOORE, JR.,
APPELLANT

v.

MICHAEL HARTMAN, ET AL.,
APPELLEES

Consolidated with 08-5371

Appeals from the United States District Court
for the District of Columbia
(No. 1:92-cv-02288)

*Paul Michael Pohl* argued the cause for appellant. With him on the briefs were *Bryan D. Kocher*, *Christian G. Vergonis*, and *Joseph M. David*.

*Richard Montague*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Michael F. Hertz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Barbara L. Herwig*, Attorney.

Before: SENTELLE, *Chief Judge*, HENDERSON and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Over twenty years ago, appellant William Moore was indicted and charged with participation in an illegal conspiracy. At the close of the government's evidence, the trial court dismissed all charges. After his acquittal, appellant filed this action asserting retaliatory prosecution claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and malicious prosecution claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (FTCA), against the prosecutor and six postal inspectors (one of whom is now deceased). Only the appellant's *Bivens* and FTCA claims against the postal inspectors remain. Following a Supreme Court decision that appellant bears the burden of proving the absence of probable cause to prevail on his retaliatory prosecution claim, the postal inspectors moved for summary judgment on the ground that appellant could not prove the absence of probable cause. The district court granted the postal inspectors' motion, concluding that an indictment is conclusive evidence of probable cause, and that the appellant failed to establish a lack of probable cause. Appellant contends on appeal that the district court erred by holding that an indictment was conclusive evidence of probable cause and that, under the proper standard, he overcame the rebuttable presumption of probable cause established by the indictment. On review, we hold that the district court erred by holding that an indictment is conclusive evidence of probable cause in a subsequent retaliatory or malicious prosecution action. We therefore vacate the judgment of the district court and remand for further proceedings.

## I. BACKGROUND

This case has a factual history stemming back over twenty years to the early 1980s. The voluminous facts in this case have been set forth in a number of prior opinions both by this court and the Supreme Court. *See Hartman v. Moore* (*Moore IV*), 547 U.S. 250, 252-56 (2006); *Moore v. Hartman* (*Moore III*), 388 F.3d 871, 873-75 (D.C. Cir. 2004); *Moore v. United States* (*Moore II*), 213 F.3d 705, 707-09 (D.C. Cir. 2000); *Moore v. Valder* (*Moore I*), 65 F.3d 189, 191-92 (D.C. Cir. 1995). The following is a brief recitation of the salient facts concerning the immediate legal battle in the war that is *Moore v. Hartman*.

In 1982, the appellant, William Moore was President and CEO of Recognition Equipment, Inc. (REI), a company that specialized in optical scanning technology. Appellees Michael Hartman *et al.* were postal inspectors for the United States Postal Service (USPS). Beginning in the late 1970s, the USPS had pursued an initiative to add four digits to the current five-digit zip codes in an effort to enable more efficient automatic scanning of mail for sorting. This zip+4 initiative would enable the USPS to use scanners that only needed to scan one line of text on mail instead of multiple lines of text. Moore's company, however, specialized in producing an optical scanner capable of scanning multiple lines of text. Moore urged the Postmaster General to consider purchasing REI's multi-line scanners in the early 1980s, which would have required the USPS to continue using a five-digit zip code. Nevertheless, in late 1983, the Postmaster General announced that the USPS was committed to using the new zip+4 format.

Many in Congress were upset at the USPS's stance on the zip+4 format. Moore and REI began to lobby Congress and USPS governors on behalf of REI's multi-line scanners, arguing

that they were superior products that did not require a wholesale zip code change. Eventually, Moore's position gained traction, with several members of Congress pressing REI's case with the USPS Board of Governors. The USPS Board of Governors finally gave in to the pressure surrounding the USPS's zip+4 tack, and made a "mid-course correction" to switch the technology from single line technology to multi-line scanners.

Shortly thereafter, the USPS Postal Inspection Service uncovered two criminal schemes relating to this design switch and, at least incidentally, to REI. The first scheme was a kickback arrangement involving USPS Governor Peter Voss and a consulting firm, Gnau & Associates, Inc. (GAI), which REI had hired in connection with its lobbying efforts. Under this scheme, GAI was paying Voss for referrals, and three GAI officers (John Gnau, Michael Marcus, and William Spartin) agreed to share the proceeds of the REI contract with Voss. A second scheme unrelated to this instant dispute involved Spartin and REI's alleged role in attempting to improperly influence the selection of a new Postmaster General. Voss, Gnau, and Marcus pleaded guilty to criminal charges for their roles in the two schemes, while Spartin was given immunity in exchange for his cooperation.

The postal inspectors then set out to determine whether anyone at REI had participated in the two uncovered criminal schemes. Following an investigation, which is the subject of this dispute, a grand jury returned an indictment against Moore and REI's vice president, Robert Reedy, charging them with conspiracy to defraud the United States, theft, receiving stolen property, and mail and wire fraud. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587 (D.D.C. 1989). REI itself was also indicted along with Moore and Reedy. The criminal matter against the defendants proceeded to trial. The trial court granted Moore's motion for a judgment of acquittal at the close of the

government's case, ruling there was insufficient evidence to show beyond a reasonable doubt that Moore was even aware of the conspiracy. *Id.* at 602.

Having been exonerated, Moore subsequently brought a civil suit alleging five causes of action against the postal inspectors who conducted the investigation against him, and the Assistant United States Attorney who prosecuted the case. The only remaining claims at this point in the litigation are Moore's *Bivens* claim alleging that the inspectors induced a retaliatory prosecution against him, and an FTCA claim against the inspectors alleging malicious prosecution. With respect to these claims, the postal inspectors moved for summary judgment on the retaliatory prosecution claim on the theory that they enjoyed qualified immunity because probable cause supported Moore's prosecution. The district court denied that motion. We affirmed the district court's decision and rejected the inspectors' qualified immunity defense finding that, under the law of this Circuit, government officials were barred from bringing charges they would not have pursued absent retaliatory motive *regardless* of whether they had probable cause to do so. *Moore III*, 388 F.3d at 872. The Supreme Court reversed, holding that, to prevail on his *Bivens* claim, Moore must prove that the prosecutor lacked probable cause to bring the charges against him, as lack of probable cause is an essential element of a *Bivens* claim for retaliatory prosecution. *Moore IV*, 547 U.S. at 265-66.

Under the Supreme Court's decision, the three elements of a retaliatory prosecution claim are that: (1) the appellant's conduct allegedly retaliated against or sought to be deterred was constitutionally protected; (2) the government's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct; and (3) the government lacked probable cause to bring the criminal prosecution against

the appellant. *See id.*; *Moore II*, 213 F.3d at 709 (describing the first two elements of a retaliatory prosecution claim). On remand, the district court granted additional discovery to explore the bases for probable cause. After discovery was complete, the inspectors again moved for summary judgment, arguing that appellant could not show that the government lacked probable cause to bring the charges against him. Moore asserted that he had shown a lack of probable cause, and pointed to a number of facts to support his argument. First, the prosecutor made statements to grand jury witnesses to "not reveal" certain portions of their testimony to the grand jury. Second, senior attorneys in the U.S. Attorney's Office allegedly stated in memoranda that the government's evidence against appellant was "extremely thin," and openly questioned whether charges should be brought against appellant. Third, the postal inspectors stated in a memorandum after the grand jury investigation that witnesses could testify that appellant was not aware of the conspiracy. Finally, the postal inspectors improperly showed GAI Officer Spartin other witnesses' grand jury statements, intimidated Spartin by threatening to prosecute his son and tearing up his plea agreement, and lobbied the U.S. Attorney's Office to prosecute appellant. The district court held that a valid indictment *conclusively* determines the existence of probable cause to bring charges against a suspect. Applying this stringent standard, the district court concluded that Moore's proffered evidence could not negate the conclusive effect of probable cause given to the grand jury indictment in this case. Under the district court's view, the only way for appellant to overcome the presumption of probable cause was to "allege misconduct or irregularities in the grand jury proceeding sufficient to call into question the validity of the indictment." Because Moore failed to present any evidence that caused the court to question the validity of the indictment, the district court granted the inspectors' summary judgment motions as to both the retaliatory and malicious prosecution claims. Moore appealed.

On appeal, Moore argues that the district court erred in deciding that a grand jury indictment conclusively establishes probable cause as a matter of law in a subsequent civil action for retaliatory and malicious prosecution.  Moore contends that the district court adopted the wrong legal standard and gave the indictment greater legal weight than it actually has in a civil suit for damages.  Instead, Moore argues, the district court should have held that a valid indictment is merely prima facie, rebuttable evidence of probable cause.  Under this standard, Moore asserts that the record evidence rebuts the prima facie showing of probable cause created by the indictment, thereby raising an issue of fact as to whether probable cause existed.

The lack of probable cause is an essential element in both retaliatory prosecution and malicious prosecution claims. *See Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (malicious prosecution requires (1) that the underlying suit was resolved in appellant's favor; (2) malice on the defendant's part; (3) lack of probable cause for the underlying prosecution; and (4) special injury); *see also Moore IV*, 547 U.S. at 265-66 (lack of probable cause is an essential element of retaliatory prosecution claim).  We therefore focus our review on this element.

## II.  ANALYSIS

### A.

We review a summary judgment determination de novo. *Adams v. Rice*, 531 F.3d 936, 942 (D.C. Cir. 2008).  Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A genuine issue of fact derives from the "evidence [being] such

that a reasonable jury could return a verdict for the nonmoving party," *id.* at 248, resolving all ambiguities and drawing all factual inferences in favor of the nonmoving party. *Id.* at 255. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Kuo-Yun Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

## B.

The controlling issue in this appeal is whether the evidence of record, taken in the light most favorable to the appellant, raises a genuine issue of material fact as to whether the government lacked probable cause in obtaining the indictment of appellant. In resolving this issue, we must determine whether and to what extent a grand jury indictment gives rise to a presumption that probable cause exists in the context of a retaliatory prosecution action. Appellant first argues that the district court should have held that a valid indictment is merely prima facie, rebuttable evidence of probable cause. He then argues that the record evidence rebuts the prima facie showing of probable cause created by the indictment, thereby requiring a jury to decide the issue of whether probable cause existed.

## Presumption of Probable Cause

We have not previously decided what presumption a grand jury indictment is afforded in a *Bivens* retaliatory prosecution claim. Appellant points out, however, that several of our sister circuits have held that a grand jury indictment is prima facie evidence of probable cause which may be rebutted. *See*, *e.g.*, *White v. Frank*, 855 F.2d 956, 961-62 (2d Cir. 1988) ("[T]hough an indictment by a grand jury is generally considered prima facie evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence."); *see also Gonzalez Rucci v. INS,* 405 F.3d 45, 49 (1st Cir. 2005) (generally an indictment establishes probable cause, but there is an exception if law enforcement officers knowingly presented false testimony to the grand jury); *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004) (grand jury indictment creates presumption of probable cause; may be rebutted if plaintiff "establish[es] that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith"); *Riley v. City of Montgomery, Alabama*, 104 F.3d 1247, 1254 (11th Cir. 1997) ("[A]n indictment is prima facie evidence of probable cause which can be overcome by showing that it was induced by misconduct."); *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989) (grand jury indictment "constitutes prima facie evidence of probable cause to prosecute, but . . . may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means"); *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988) ("obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983" when "finding of probable cause remained tainted by the malicious actions of the government officials"); *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997) (same; explicitly adopts

reasoning of *Hand*). *Cf. Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (in a later civil action for malicious prosecution, a judicial finding of probable cause in a criminal proceeding is prima facie evidence of probable cause which may be rebutted by a "showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith"); *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002) (a judicial finding of probable cause in a criminal proceeding does not bar a future malicious prosecution claim where plaintiff alleges the police officer supplied false information to establish probable cause); *DeLoach v. Bevers*, 922 F.2d 618, 620-21 (10th Cir. 1990) (despite judicial determination of probable cause, police officer "cannot hide behind the decisions of others involved in [plaintiff's] arrest and prosecution if she deliberately conceals and mischaracterizes exculpatory evidence"). We join these other circuits in their unanimous holding.

The district court's reliance on the Supreme Court's decisions in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Ex parte United States*, 287 U.S. 241 (1932), as well as our decision in *United States v. King*, 482 F.2d 768 (D.C. Cir. 1973), to reach its conclusion that an indictment is conclusive evidence of probable cause in a subsequent retaliatory prosecution claim is misplaced. Admittedly, each of these cases states that the return of an indictment conclusively establishes probable cause. *See Gerstein*, 420 U.S. at 117 n.19; *Ex parte United States*, 287 U.S. at 250; *King*, 482 F.2d at 776. Nevertheless, these cases arose within the context of a criminal case, and not within a civil retaliatory prosecution action brought in response to an allegedly improper criminal prosecution. *See Gerstein*, 420 U.S. at 106-07 (defendant arrested on an information seeking judicial determination of probable cause for detention prior to his criminal trial); *Ex parte United States*, 287 U.S. at 245 (prosecutor seeking to set aside a federal district court's refusal

to issue a bench warrant to arrest defendant after a grand jury indictment was issued); *King*, 482 F.2d at 770 (criminal defendant at trial attempted to reopen his preliminary hearing, after an indictment was issued against him). Nothing in these cases requires that their holdings control in a civil action such as this in which an essential element of the cause of action is a lack of probable cause. In the criminal context, if a case has been tried, it is logical to presume that the question of probable cause has been subsumed in the jury verdict—particularly when guilt has been established beyond a reasonable doubt. In the odd case of *Ex parte United States*, there was no other way to test the proposition of probable cause than to let the criminal case go forward. In either event, probable cause was deemed to be established for the purpose of proceeding to criminal adjudication, and not for the purpose of contesting the existence of the elements of a later civil action for malicious or retaliatory prosecution.

Even looking to the criminal precedents, we recognized in *King* that there were limits to the presumption that an indictment conclusively establishes probable cause. A court may look beyond an indictment to "protect the accused from harmful consequences" when his constitutional rights are violated, even though doing so might have a dispositive impact on the question of probable cause. *Id.* at 776. "[T]he primary purpose of the *Bivens* doctrine is to remedy abuses by those who act as agents for the sovereign." *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 224 (D.C. Cir. 1980) (citing *Bivens*, 403 U.S. at 392). Therefore, even in light of *King*, the "conclusive existence of probable cause" established by the indictment must give way if, as Moore alleges, the accused's constitutional rights have been violated.

The standard we adopt today is also consistent with the Supreme Court's opinion in *Moore IV*. Indeed, in *Moore IV*, the

Court held that appellant need only show "some evidence" of a lack of probable cause. *Moore IV*, 547 U.S. at 263. The Court recognized that "it would be unrealistic to expect a prosecutor to reveal his mind." *Id.* at 264. Accordingly, the Court noted that appellant may satisfy his burden by looking to "a distinct body of highly valuable circumstantial evidence available . . . showing whether there was or was not probable cause to bring the criminal charge." *Id.* at 261. These statements support our interpretation that the Court viewed the indictment as prima facie–not conclusive–evidence of probable cause.

For these reasons, the district court was incorrect in holding that an indictment is conclusive evidence of probable cause in a retaliatory prosecution action.

Because the district court erred in defining the proper presumption of probable cause established by the grand jury indictment, it remains to be determined whether the evidence appellant put forth is sufficient to overcome this presumption under the proper standard. The imposition of a prima facie standard creates a rebuttable presumption that will stand until the appellant introduces sufficient evidence to negate it. *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C. Cir. 1988). While the de novo nature of our review would make it possible for us to make the determination in the first instance, in the interest of both judicial efficiency and assuring a full and fair hearing to both parties, we will vacate the district court's judgment and remand the matter for further proceedings consistent with this opinion.

On remand, the district court will of course take into account the rebuttable presumption in favor of probable cause, but should also consider whether appellant has offered enough evidence to create a genuine issue of material fact as to the legitimacy, veracity, and sufficiency of the evidence presented

to the grand jury. Given the presumption, to carry his burden he must present evidence that the indictment was produced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *See supra* pp. 9-10 (citing cases).

## III. CONCLUSION

For the reasons set forth above, we hold that the district court erred in granting summary judgment for the defendants. We therefore vacate the judgment and remand the matter for further proceedings consistent with this opinion.

*So ordered.*