# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 14, 2011          Decided July 15, 2011

No. 10-5334

WILLIAM G. MOORE, JR. ET AL.,
APPELLEES

v.

MICHAEL HARTMAN ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:92-cv-02288)

*Catherine Y. Hancock*, Attorney, United States Department of Justice, argued the cause for the appellants. *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, United States Attorney, and *Barbara L. Herwig*, Attorney, were on brief. *Richard Montague*, Attorney, entered an appearance.

*Paul Michael Pohl* argued the cause for the appellees. *Bryan D. Kocher*, *Christian G. Vergonis* and *Charles T. Kotuby, Jr.* were on brief.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: William G. Moore alleges that six U.S. Postal Inspectors (Postal Inspectors) wrongly caused him to be criminally prosecuted in retaliation for his public criticism of the United States Postal Service (USPS) and its personnel. The Postal Inspectors appeal the district court's denial of their motion for summary judgment, based on qualified immunity, on Moore's claim of retaliatory inducement to prosecution in violation of his right to free speech under the First Amendment to the United States Constitution. For the reasons set out below, we affirm in part and dismiss in part.

## I.

In the early 1980s Moore was the chief executive of Recognition Equipment Inc. (REI), a publicly-traded corporation, which was pursuing a contract to sell its multiple-line optical character readers to USPS for use in scanning postal addresses. At the time, many of USPS's top officials were advocating purchasing single-line scanners to use with USPS's new "zip + 4" nine-digit zip codes. REI lobbied members of the United States Congress and Moore personally testified before congressional committees in opposition to the zip + 4 codes and in favor of multiple-line scanners. In addition, notwithstanding the United States Postmaster General's admonition "to be quiet," REI hired public relations firm Gnau and Associates, Inc. (GAI) to advocate on REI's behalf. *Hartman v. Moore,* 547 U.S. 250, 253 (2006) (*Moore IV*). GAI had been recommended to Moore by Peter Voss, a member of USPS's Board of Governors.

REI's lobbying efforts bore fruit in July 1985 when USPS, at the urging of several members of the Congress, changed course and decided to use multiple-line scanners after all—yielding to the many critics (both within the government and without) who opposed the nine-digit zip codes and the single-line scanners. Unfortunately for REI, however, USPS

decided to purchase multiple-line scanners from one of REI's competitors—a decision Moore attributes to retaliation for his criticism of USPS and the zip + 4 codes. To make matters worse, shortly thereafter, USPS instigated an investigation of a kickback scheme in which, it maintained, Moore was a participant.

The Postal Inspectors discovered that GAI's chairman, John R. Gnau, Jr., had paid kickbacks to Voss in return for Voss having referred REI (and other companies) to GAI. They further learned that GAI president William Spartin and vice president Michael Marcus were also involved in the scheme. In April 1986, Spartin entered an agreement with the government in which he agreed, in exchange for immunity, to cooperate with the government's investigation and eventual criminal prosecution of the participants in the scheme. With Spartin's cooperation, the government secured guilty pleas from Voss, Gnau and Marcus to offenses related to the giving and receipt of illegal gratuities. "Notwithstanding very limited evidence linking Moore and REI to any wrongdoing," *Moore IV*, 547 U.S. at 253-54, then-Assistant United States Attorney Joseph B. Valder filed criminal charges against them and, on October 6, 1988, a federal grand jury indicted them, along with REI vice president Robert Reedy, on seven counts involving fraud and theft—all stemming from REI's attempts to contract with USPS for its multiple-line scanners.[1]

In November 1989, six weeks into the ensuing bench trial, the district court granted the defendants' motion for judgment of acquittal at the close of the government's case, concluding that

---

[1]The indictment charged the defendants with one count each of conspiracy to defraud the United States (18 U.S.C. § 371), theft (*id*. §§ 1707, 2) and receiving stolen property (D.C. Code §§ 22-3832(a), (c)(1) and 22-105) (now §§ 22-3232, 22-1805) and two counts each of mail fraud (18 U.S.C. §§ 1341, 2) and wire fraud (*id.* §§ 1343, 2).

the government had failed to establish a prima facie case. *United States v. Recognition Equip. Inc.*, 725 F. Supp. 587, 587-88 (D.D.C. 1989).

On November 19, 1991, Moore filed this *Bivens*[2] action in the Northern District of Texas, where he resided, alleging that prosecutor Valder and six named postal inspectors deprived him of rights under the First, Fourth and Fifth Amendments to the United States Constitution and asserting supplemental tort claims under the local laws of Texas and of the District of Columbia for defamation, invasion of privacy, false arrest, abuse of process and malicious prosecution. Moore subsequently filed a separate action for malicious prosecution against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80. The two actions were transferred to the United States District Court for the District of Columbia and consolidated. The case has since been up and down the litigation ladder, disposing of all but two of Moore's claims: the *Bivens* retaliatory inducement to prosecution claim and the FTCA malicious prosecution claim. We now summarize the recent procedural history as it relates to the single claim at issue in this latest interlocutory appeal, the *Bivens* retaliatory inducement to prosecution claim.[3]

---

[2]*See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3]For the intervening procedural history, *see Moore v. Hartman*, Nos. 92-cv-2288 & 93-cv-0324, 1993 WL 405785 (D.D.C. Sept. 24, 1993); *Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1995) (*Moore I*), *cert. denied*, 519 U.S. 820 (1996); *Moore v. United States,* 213 F.3d 705 (D.C. Cir.) (*Moore II*), *cert. denied*, 531 U.S. 978 (2000). In the course of the lengthy litigation, two of the defendant Postal Inspectors died, one of whom has been replaced by a personal representative.

In 2003, after two appeals to this court, the district court on remand denied a motion for summary judgment filed by the Postal Inspectors in a one-paragraph unpublished order, stating:

> Upon consideration of the motion of defendants, United States and Michael Hartman, et al., for summary judgment and the response thereto, the Motion for Summary Judgment is DENIED. There are material facts in dispute. The most significant are the facts surrounding the presentation of evidence to the grand jury and the disclosure of grand jury testimony to a key prosecution witness.

*Moore v. Valder*, Nos. 92-cv-2288 & 93-cv-0324 (D.D.C. Aug. 5, 2003). On interlocutory appeal the Postal Inspectors, relying on extra-Circuit authority, argued that they were entitled to qualified immunity because the record established that they acted based on probable cause, the absence of which is a sine qua non of a First Amendment retaliatory inducement to prosecution claim.

We affirmed the summary judgment denial because "the clearly established law of this circuit barred government officials from bringing charges they would not have pursued absent retaliatory motive, *regardless of whether they had probable cause to do so*." *Moore v. Hartman*, 388 F.3d 871, 872 (D.C. Cir. 2004) (*Moore III*) (emphasis added).

The United States Supreme Court granted *certiorari* and reversed, holding that a retaliatory inducement to prosecution claimant must plead and prove the absence of probable cause as an element of his case. *Moore IV*, 547 U.S. at 265-66. The no-probable-cause requirement is justified, the Court wrote, because of "the need to prove a chain of causation from animus to injury, with details specific to retaliatory-prosecution cases." *Id*. at 259. Unlike other retaliatory constitutional torts, the Court explained, retaliatory inducement to prosecution involves two

special issues affecting proof of causation: (1) evidence showing probable cause vel non will always be available as "a distinct body of highly valuable circumstantial evidence . . . apt to prove or disprove retaliatory causation"; and (2) "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex than it is in other retaliation cases" because the plaintiff must show not only that "the nonprosecuting official acted in retaliation" but also "that he induced the prosecutor to bring charges that would not have been initiated without his urging"—a requirement the Court found must be met by the plaintiff's showing lack of probable cause. *Id*. at 261-63. After remand from the Supreme Court, we remanded to the district court "for further proceedings consistent with the Supreme Court's decision," noting that the district court had previously "expressed no view either on whether there was probable cause to support Moore's prosecution or on the relationship of probable cause to the Inspectors' qualified immunity." *Moore v. Hartman*, No. 03-5241 (D.C. Cir. Aug. 22, 2006) (unpublished).

The Postal Inspectors again moved for summary judgment in 2007. This time, the district court granted the motion on the ground the indictment conclusively established probable cause because Moore had failed to allege "misconduct" in the grand jury proceeding that "undermine[d] the validity of the indictment sufficiently to negate its conclusive effect as to probable cause." *Moore v. Hartman*, 569 F. Supp. 2d 133, 138 (D.D.C. 2008). The court concluded:

> Because the plaintiff has presented no evidence that causes the court to question the validity of the grand jury proceeding, the indictment conclusively establishes that the government had probable cause to bring the charges against him. And because absence of probable cause is an element of both the plaintiff's *Bivens* retaliatory prosecution claim and his malicious

prosecution claim under the FTCA, the court grants the defendants' motion for summary judgment as to both claims.

*Id*. at 141.

Moore appealed and we vacated the grant of summary judgment, concluding that "the district court erred by holding that an indictment is conclusive evidence of probable cause in a subsequent retaliatory or malicious prosecution action." *Moore v. Hartman*, 571 F.3d 62, 63 (D.C. Cir. 2009) (*Moore V*). We first recited the evidence on which Moore relied to show lack of probable cause:

> First, the prosecutor made statements to grand jury witnesses to "not reveal" certain portions of their testimony to the grand jury. Second, senior attorneys in the U.S. Attorney's Office allegedly stated in memoranda that the government's evidence against appellant was "extremely thin," and openly questioned whether charges should be brought against appellant. Third, the postal inspectors stated in a memorandum after the grand jury investigation that witnesses could testify that appellant was not aware of the conspiracy. Finally, the postal inspectors improperly showed GAI Officer Spartin other witnesses' grand jury statements, intimidated Spartin by threatening to prosecute his son and tearing up his plea agreement, and lobbied the U.S. Attorney's Office to prosecute appellant.

*Id*. at 65.[4] We then remanded for the district court to determine

---

[4] In *Moore III*, we had already concluded: "Considering all th[e] evidence together and interpreting it in Moore's favor, we cannot conclude that the postal inspectors would have prosecuted Moore had they not been irked by his aggressive lobbying against Zip + 4." 388 F.3d at 884. We noted:

"whether the evidence appellant put forth is sufficient to overcome this presumption under the proper standard," namely, a "prima facie standard [that] creates a rebuttable presumption that will stand until the appellant introduces sufficient evidence to negate it." *Id*. at 69 (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C. Cir. 1988)). In particular, we instructed the district court:

> On remand, the district court will of course take into account the rebuttable presumption in favor of probable cause, but should also consider whether appellant has offered enough evidence to create a genuine issue of material fact as to the legitimacy, veracity, and sufficiency of the evidence presented to the grand jury. Given the presumption, to carry his burden he must present evidence that the indictment was produced by fraud, corruption, perjury, fabricated

The evidence of retaliatory motive comes close to the proverbial smoking gun: in addition to subpoenas targeting expressive activity, Moore has produced not one, but two Postal Inspection Service documents specifically referring to his lobbying as a rationale for prosecution. At the same time, evidence of guilt seems quite weak: not only did none of the admitted conspirators implicate Moore, but even the U.S. Attorney's Office concluded that, at best, Moore "probably" knew about the charged conspiracies, and even that conclusion rested on the assumption that Reedy likely shared with Moore his misgivings about Gnau and Voss—an assumption the record fails to substantiate. Moreover, the U.S. Attorney's Office warned that the case would be "complicated" and "consume significant resources"—considerations that, under normal circumstances, might weigh against prosecuting a marginal case.

*Id*. at 884-85.

evidence, or other wrongful conduct undertaken in bad
faith.

*Id.*

On remand, the Postal Inspectors renewed their motion for summary judgment, asserting that (1) probable cause existed because Moore failed to overcome the probable cause presumption and, in any event, the evidence established probable cause and (2) even if there was no probable cause, the defendants were entitled to qualified immunity because a reasonable official could have believed there was probable cause.

The district court denied the Postal Inspectors' motion. *Moore v. Hartman*, 730 F. Supp. 2d 174 (D.D.C. 2010) (*Moore VI*). Citing the evidence we highlighted in *Moore V*, the district court concluded: "Based on this evidence, a reasonable factfinder could conclude that the government procured the plaintiff's indictment through wrongful conduct undertaken in bad faith and that the government lacked probable cause to prosecute the plaintiff." *Id.* at 179 (quotation marks omitted).

The Postal Inspectors filed a timely notice of appeal.

## II.

The three elements of a *Bivens* action for retaliatory inducement to prosecution are:

(1) the appellant's conduct allegedly retaliated against
or sought to be deterred was constitutionally protected;
(2) the government's bringing of the criminal
prosecution was motivated at least in part by a purpose
to retaliate for or to deter that conduct; and (3) the
government lacked probable cause to bring the
criminal prosecution against the appellant.

*Moore V*, 571 F.3d at 65. The Postal Inspectors challenge the district court's treatment of the third element on two grounds. Before addressing the merits of their arguments, we first consider whether and to what extent we have jurisdiction to review the denial of the Postal Inspectors' summary judgment motion.

"Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal." *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011) (quoting 28 U.S.C. § 1291). A summary judgment order denying qualified immunity, however, presents a special case. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This means:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences.

*Harlow*, 457 U.S. at 819 (footnote & internal quotation omitted). "Because a plea of qualified immunity can spare an official not only from liability but from trial," the Supreme Court has recognized "a *limited* exception to the categorization of summary judgment denials as nonappealable orders." *Ortiz*, 131 S. Ct. at 891 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)) (emphasis added). "Provided it 'turns on an issue of law,' " a district-court order denying qualified immunity is

immediately appealable because it " 'conclusively determine[s]' that the defendant must bear the burdens of discovery; is 'conceptually distinct from the merits of the plaintiff's claim'; and would prove 'effectively unreviewable on appeal from a final judgment.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. at 530, 527-28 (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949))). This exception is significantly limited, however, in that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). In articulating this limitation, the Supreme Court explained that, after considering the " 'competing considerations' " of "delay, comparative expertise of trial and appellate courts, and wise use of appellate resources," the Court was "persuaded that '[i]mmunity appeals . . . interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law.' " *Id.* at 317 (quoting 5A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.10, at 664 (1992)) (alterations and ellipsis in *Johnson*). Thus, summary judgment orders denying qualified immunity are immediately appealable only "when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was clearly established." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (quoting *Johnson*, 515 U.S. at 317) (alteration in *Behrens*) (other internal quotation omitted).[5] The Postal Inspectors' first argument fails this test.

---

[5]The *Johnson* Court was primarily concerned that review of the district court's factual determinations on summary judgment would require the appellate court "to consult a 'vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery

The Postal Inspectors first challenge the sufficiency of the evidentiary basis for the district court's determination that "there is a genuine issue of material fact as to whether the government lacked probable cause to prosecute [Moore]," *Moore VI*, 730 F. Supp. 2d at 175. This is precisely the sort of determination, however, that the Supreme Court held in *Johnson* is not immediately appealable. In *Moore V*, we remanded to the district court to "consider whether appellant has offered enough evidence to create a genuine issue of material fact as to the legitimacy, veracity, and sufficiency of the evidence presented to the grand jury." 571 F.3d at 69. On remand, the district court did just that—it examined the evidence and decided that, based thereon, "a reasonable factfinder could conclude that the government procured the plaintiff's indictment through wrongful conduct undertaken in bad faith and that the government lacked probable cause to prosecute the plaintiff." *Moore VI*, 730 F. Supp. 2d at 179 (quotation marks omitted). Under *Johnson*, we lack jurisdiction at this stage of the proceeding to review the court's fact-based determination because it is not a "final decision[]" within the meaning of 28 U.S.C. § 1291.[6]

materials,' " *Iqbal*, 129 S. Ct. at 1947 (quoting *Johnson*, 515 U.S. at 316)—a point well illustrated by this appeal in which the parties filed a 23-volume joint appendix. The *Iqbal* Court concluded, however, that the same concern does not justify extending the *Johnson* limitation to a denial of a motion to dismiss where the appellate court "consider[s] only the allegations contained within the four corners of [the] complaint." *Id*.

[6]The Postal Inspectors argue that we should review the evidence *de novo* because the district court "failed to review the record to determine what facts supported its conclusion that plaintiff successfully rebutted the presumption of probable cause." Appellants' Br. 55. It is true that in *Johnson* the Supreme Court acknowledged that "occasionally," "a court of appeals may have to undertake a

13

Next, the Postal Inspectors assert that a reasonable investigator in their position could have concluded, based on the evidence, that probable cause existed to prosecute Moore. In a suit alleging arrest or prosecution in violation of the Fourth Amendment, a defendant who " 'mistakenly conclude[s] that probable cause is present' " is nonetheless entitled to qualified immunity "if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.' " *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also Wardlaw v. Pickett*, 1 F.3d 1297, 1304-05 (D.C. Cir. 1993), *cert. denied*, 512 U.S. 1204 (1994). Such a reasonable if mistaken belief that probable cause exists is sometimes termed "arguable probable cause." *See, e.g.*, *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (defining "arguable probable cause"); *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010) (same); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (same). This probable cause shields a defendant from a Fourth Amendment wrongful prosecution claim as well as a Fourth Amendment arrest claim. *See Grider*, 618 F.3d at 1257 n.25; *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009).[7] Whether the doctrine applies as well to Moore's retaliatory inducement to prosecution claim under the First Amendment

_____

cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, 515 U.S. at 319. This is not such a case. The district court set out with adequate specificity the "evidence" on which it relied. *See Moore VI*, 730 F. Supp. 2d at 179.

[7]Although this Circuit has not used the term "arguable probable cause," we have applied a comparable analysis. *See Wardlaw*, 1 F.3d at 1305 ("[A]ssuming *arguendo* that probable cause was lacking, the deputies' conclusion that probable cause existed was objectively reasonable.").

constitutes, we believe, an issue sufficiently legal to come within the qualified immunity exception to the final decision rule.[8] *See Behrens*, 516 U.S. at 313 (immediately appealable issue is "typically . . . whether the federal right allegedly infringed was clearly established ") (quotation marks omitted); *Moore IV*, 547 U.S. at 257 n.5 (requirement to show absence of probable cause comes within definition of tort and is "directly implicated by the defense of qualified immunity and properly before us on interlocutory appeal"). Accordingly, we address this argument on its merits and conclude that arguable probable cause does not apply to a First Amendment retaliatory inducement to prosecution case because probable cause is not an element of the First Amendment right allegedly violated.

The keystone to whether an arrest or prosecution violates an individual's Fourth Amendment right "to be secure . . . against *unreasonable* searches and seizures" (emphasis added) is whether the action taken is based on probable cause to believe the person committed a crime. *See Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) ("It is well settled that an arrest without probable cause violates the fourth amendment.") (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *Pitt v. District of Columbia*, 491 F.3d 494, 511-12 (D.C. Cir. 2007) ("We join the

---

[8]At least two circuits have required a no-probable-cause showing for First Amendment retaliatory *arrest* claims and have extended the "arguable probable cause" doctrine to such arrests. *See McCabe v. Parker*, 608 F.3d 1068, 1077-79 (8th Cir. 2010) (relying on *Moore IV*); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citing circuit precedent going back pre-*Moore IV*). Other circuits have read *Moore IV* not to require a no-probable-cause showing in retaliatory *arrest* cases. *See Howards v. McLaughlin*, 634 F.3d 1131, 1147-48 (10th Cir. 2011) (noting circuit split *post-Moore IV* and rejecting requirement); *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 & n.31 (9th Cir. 2006) (same). We have no occasion to address First Amendment retaliatory *arrest* requirements here.

large majority of circuits in holding that malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably 'seized' without probable cause, in violation of the Fourth Amendment."). Thus, in a Fourth Amendment suit, the defendant's entitlement to qualified immunity often turns on whether he "reasonably but mistakenly conclude[s] that probable cause is present," that is, whether he acted with arguable probable cause. *Hunter*, 502 U.S. at 227 (quoting *Anderson*, 483 U.S. at 641); *see, e.g.*, *Droz*, 580 F.3d at 109; *Frye v. Kansas City, Mo. Police Dep't*, 375 F.3d 785, 792 (8th Cir. 2004). Unlike the Fourth Amendment claim, however, the First Amendment does not itself require lack of probable cause in order to establish a retaliatory inducement to prosecution claim.

The First Amendment guarantees various rights that have been found to prohibit governmental punishment in retaliation for their exercise—specifically, for our analysis, the right to free speech. *See Wilkie v. Robbins*, 551 U.S. 537, 555-56 (2007) (noting Court's "longstanding recognition that the Government may not retaliate for exercising First Amendment speech rights"); *id.* at 584 (Ginsburg, J, concurring in part and dissenting in part) ("The Court has held that the Government may not unnecessarily penalize the exercise of constitutional rights. This principle has been applied, most notably, to protect the freedoms guaranteed by the First Amendment."). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998); *accord Moore IV*, 547 U.S. at 256 ("Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right . . . .") (quotation and alteration omitted). Criminal prosecution is among the retaliatory government actions that violate the First Amendment. *See Moore IV*, 547 U.S. at 256 ("[A]s a general matter the First Amendment

prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."). But nothing about the First Amendment's right to free speech or the concomitant right to be free from punishment therefor suggests any connection between the right and criminal "probable cause." And the Supreme Court identified no such connection in *Moore IV*. In fact, the Court rejected the Postal Inspectors' argument that First Amendment retaliatory inducement to prosecution is "a close cousin of malicious prosecution under common law, making the latter's no-probable-cause requirement a natural feature of the constitutional tort." *Id*. at 258; *see id*. ("[I]n this instance we could debate whether the closer common-law analog to retaliatory prosecution is malicious prosecution (with its no-probable-cause element) or abuse of process (without it)."). Nor did *Moore IV* purport to add no probable cause as an element of a First Amendment retaliation *violation*. As we explained *supra*, pp. 5-6, *Moore IV* simply introduced a no-probable-cause proof requirement into the remedial framework for recovering in a retaliatory inducement to prosecution suit— requiring that it "must be pleaded and proven," "as an element of a plaintiff's case," in order to establish the requisite causal connection in such a suit. 547 U.S. at 265-66. The plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action" and often may do so circumstantially simply by offering the fact of a retaliatory motive and the infliction of an injury. *Moore IV*, 547 U.S. at 259-60. For an inducement-to-prosecute case such as this, however, the *Moore IV* Court determined, as we noted above, that a special rule of proof is needed—one which requires that the plaintiff establish causation by proving the absence of probable cause. The court added this requirement because of two characteristics peculiar to the litigation of such a suit: (1) the happenstance that "there will always be a distinct body of highly valuable circumstantial

evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge" and (2) the greater complexity of "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury" *Id.* at 261. The causal complexity arises from the fact that, unlike plaintiffs alleging other retaliatory acts,[9] a retaliatory inducement to prosecution plaintiff must show that the nonprosecuting defendant official not only acted in retaliation but also "induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.* at 262. Not only does this require a two-step causal showing—both retaliatory animus and actual inducement—it is further complicated at the second step because "there is an added legal obstacle in the longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Id.* at 263. Thus, in *Moore IV*, the Supreme Court concluded:

> Some sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose

---

[9]For retaliatory acts other than prosecution that have been found to violate the First Amendment, *see, e.g.*, *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 674-75, 686 (1996) (termination of contract by county in retaliation for contractor's criticism of county and its commissioners); *Crawford–El v. Britton*, *supra* (misdirecting transferred prisoner's belongings in retaliation for interview with reporter regarding prison overcrowding); *Perry v. Sindermann*, 408 U.S. 593 (1972) (retaliatory nonrenewal of state junior college professor's contract); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 566–567 (1968) (retaliatory firing of teacher for writing public letter criticizing school board's financial administration).

18

action has injured the plaintiff. The connection, to be alleged and shown, is the absence of probable cause.

*Id*. At the same time, however, the Court expressly recognized the limited role probable cause plays as a mechanism to prove causation: "It would be open to us, of course, to give no special prominence to an absence of probable cause in bridging the causal gap, and to address this distinct causation concern at a merely general level, leaving it to such pleading and proof as the circumstances allow." *Id*. at 264. In sum, the absence of probable cause is *not* an element of the free speech right allegedly violated in a First Amendment retaliatory inducement to prosecution case and for this reason its presence vel non has no bearing on whether a defendant has violated a "clearly established . . . constitutional *right*[] of which a reasonable person would have known." *Harlow*, 457 U.S. at 818 (emphasis added); *see Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[A]s we explained in *Anderson*, the *right allegedly violated* must be defined at the appropriate level of specificity before a court can determine if it was clearly established." (citing *Anderson*, 483 U.S. at 641) (emphasis added)). Rather, the plaintiff's ability vel non to plead and prove the absence of probable cause determines only whether he has made a showing of causation through the specific means the court mandates.[10] The contours

---

[10]That the absence of probable cause is only a remedial requirement for proving causation (and not an element of a First Amendment right or its violation) is reinforced by the distinction three circuits have drawn between the "ordinary" single-actor retaliatory prosecution (or arrest) case, which does not require a no-probable-cause showing, and an inducement case such as this, where causation is "more complex than it is in other retaliation cases," *Moore IV*, 547 U.S. at 261, and such a showing *is* required. *See Howards v. McLaughlin*, 634 F.3d 1131, 1147-48 (10th Cir. 2011) (noting circuit "split over whether [*Moore IV*] applies to retaliatory arrests" and "declin[ing] to extend [*Moore IV*]'s 'no-probable-cause' requirement

of the right to be free from retaliatory inducement to prosecution were sufficiently clear that the Postal Inspectors "could be expected to know" at the time whether their conduct violated the First Amendment. *Harlow*, 457 U.S. at 819. Accordingly, we conclude the doctrine of arguable probable cause does not apply to a First Amendment retaliatory inducement to prosecution claim. This conclusion is consistent with the Supreme Court's decision in *Moore IV* which, notwithstanding the Court was reviewing an interlocutory qualified immunity denial, held that "probable cause" (not *arguable* probable cause) must be pleaded and proven as an element of a plaintiff's case in order to establish a causal link between those inducing the prosecution and the prosecutors themselves. *Moore IV*, 547 U.S. at 265-66.

At bottom, the Postal Inspectors' arguable probable cause argument is nothing more than an attempt to end-run the jurisdictional limitation on interlocutory review. They seek to frame as a qualified immunity defense what is in fact a challenge to the district court's determination that a disputed issue of fact exists on the issue of causation, to be determined by

---

to this retaliatory arrest case" inasmuch as officers were alleged to have arrested plaintiff "with their own retaliatory motives, because of the exercise of his First Amendment rights"—"the quintessential 'ordinary retaliation claim' as outlined in [*Moore IV*]" (citing *Moore IV*, 547 U.S. at 259–60)); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 n.4. (6th Cir. 2011) (not requiring no-probable-cause showing for claims of simple retaliatory arrest, concluding *Moore IV* applies "to claims of wrongful arrest only when prosecution and arrest are concomitant"; distinguishing *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006), which applied no-probable-cause requirement to arrest as well as prosecution because defendants arrested plaintiff only after inducing grand jury to indict him); *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006) (no-probable-cause showing was not required because "retaliation claim . . . d[id] not involve multi-layered causation as did the claim in [*Moore IV*]").

the existence vel non of probable cause.  *See Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("[Q]ualified immunity is a doctrine designed to respond to legal uncertainty, but causation (a factual matter) has nothing to do with *legal* uncertainty.") (emphasis in original), *cert. denied*, 129 S. Ct. 2381 (2009). Under the Supreme Court's *Johnson v. Jones* holding, the district court's finding of disputed issues of fact is unreviewable on interlocutory appeal.  *See Krout v. Goemmer*, 583 F.3d 557, 564-65 (8th Cir. 2009) ("[I]f the issues raised on appeal relate to . . . *causation*, or other similar matters that the plaintiff must prove, we have no jurisdiction to review them in an interlocutory appeal of a denial of a summary-judgment motion based on qualified immunity." (emphasis in original) (quotation omitted)); *Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008) (court has "no jurisdiction to address any causation issues" when deciding case "at the qualified immunity stage"); *Charles v. Grief*, 522 F.3d 508, 516 (5th Cir. 2008) (where district court "clearly ruled [plaintiff] produced sufficient evidence to show that there existed a genuine issue of material fact on the issue of causation," court "lack[ed] jurisdiction over such appeal[] of fact-based denial[] of qualified immunity"). Whether the Postal Inspectors had probable cause is a disputed issue of fact to be decided by the jurors at trial.

For the foregoing reasons, insofar as the appeal challenges the district court's determination that there are genuine issues of disputed fact, we dismiss it for lack of jurisdiction.  Insofar as the district court declined to find the Postal Inspectors protected by qualified immunity based on "arguable probable cause," we affirm.  Accordingly, we remand to the district court for trial on the merits.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

I write separately to express dismay over the herculean effort the plaintiff has had to expend simply to get his day in court. It has taken twenty-five years, a criminal trial, eleven appellate judges as well as all participating members of the United States Supreme Court—not one of whom has rejected his claim as a matter of law—to get to the point that a jury will finally hear and decide if government officials engaged in pay-back because the plaintiff sought to do business with the government. To say that this has not been the government's finest hour is a colossal, and lamentable, understatement.